# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOSE G. MEDINA | ) | Case No. |
| | ) | 5:24-mj-1159-PRL |
| | ) | |
| | ) | **SEALED** |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about January 1, 2023, and December 31, 2023, in the counties of Lake and Orange in the Middle District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 1) 18 U.S.C. § 922(a)(6) | 1) Knowingly making a materially false statement in connection with the acquisition of a firearm |
| 2) 18 U.S.C. § 924(a)(1)(A) | 2) Causing a Federal Firearm Licensee to maintain false information in its official records |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Octavia Johnson, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 3, 2024

_____
*Judge's signature*

City and state: Ocala, Florida    Philip R. Lammens, U.S. Magistrate Judge
*Printed name and title*

STATE OF FLORIDA            MDFL CASE NO. 5:24-mj-1159-PRL

COUNTY OF MARION

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Octavia Johnson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and I have been so employed since October 2018. I am currently assigned to the ATF Tampa Field Division, Orlando Group I Field Office. Prior to my employment with ATF, I was a special agent with the United States Secret Service ("USSS") in Dallas, Texas for approximately two years. I was also a Postal Police Officer with the United States Postal Inspection Service ("USPIS") in Miami, Florida for approximately six years. I have successfully completed the Federal Law Enforcement Training Center's Criminal Investigator Training Program, the ATF Special Agent Basic Training, the USSS Special Agent Basic Training, as well as the USPIS Postal Police Basic Training Academy.

2. I have been involved in numerous investigations related to violent offenses, drug trafficking offenses, firearms offenses, money laundering offenses, fraud, mail related offenses, and variety of other crimes. While

1

conducting and participating in these investigations, I have prepared and executed search warrants resulting in the seizure of narcotics, contraband, firearms, and electronic evidence of crimes.

3. The information set forth in this affidavit is based on my investigation, information supplied to me by other law enforcement officers and agents, and information contained within various government databases and records. Because this affidavit is submitted for the limited purpose of establishing probable cause to support the issuance of a criminal complaint, I have not included details of all aspects of my investigation. I have set forth only those facts I believe are necessary to establish probable cause that violations of 18 U.S.C. § 922(a)(6), knowingly making a materially false statement in connection with the acquisition of a firearm, and 18 U.S.C. § 924(a)(1)(A), causing a Federal Firearm Licensee ("FFL") to maintain false information in its official records, were committed between on or about January 1, 2023, and on or about December 31, 2023.

## PROBABLE CAUSE

4. Between on or about January 1, 2023, and on or about December 31, 2023, Jose G. **MEDINA** purchased firearms in the Middle District of Florida for other individuals. Some of these firearms were intercepted by the

United States Custom and Border Patrol ("CBP") as other individuals attempted to transport them across the United States' border into Mexico.

*Federal Firearm Licensing and Requirements*

5. An FFL is an individual or company that is licensed to engage in the business of manufacturing, importing, or dealing in firearms under 18 U.S.C. § 923. To become an FFL, the individual and/or company must complete an application and pay a fee to the Office of the Attorney General. Upon approval, an FFL is then required to complete and maintain records concerning the receipt, sale, and transfer of firearms, which are subject to inspection and examination by the government. An FFL is required to record and notify ATF of the sale of multiple firearms to a single individual, as this is an indication of firearms trafficking.

6. One of the records that an FFL must maintain is an ATF Form 4473 (5300.9) – Firearms Transaction Record (ATF Form 4473). The form must be completed whenever a firearm is sold or transferred to an individual. This form is designed to identify the serial number and type of firearm sold, the seller, the person purchasing the firearm, the accurate current address of the purchaser, and whether the purchaser is eligible to possess or buy a firearm. Eligibility to purchase a firearm is determined by the person's answers to a series of questions, which relate to a list of disqualifying factors

under federal law. These include, but are not limited to, whether the person conducting the purchase is the actual transferee/buyer of the firearm.

7.  The ATF Form 4473 states in bold lettering, "**Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you.**" This warning is to ensure the firearm being sold is intended for the person completing the ATF Form 4473, which includes passing the criminal background check. Whether someone is the actual transferee/buyer is material to the transaction because the FFL cannot complete the transaction if the purchaser is not the actual transferee/buyer.

8.  Prior to the completion of the Form 4473, the purchaser must read and sign, attesting to the following:[1]

> **I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 21.b. through 21.k. is prohibited from receiving or possessing a firearm. I understand that a person who answers "yes" to question 21.l.1. is prohibited from receiving or possessing a**

---

[1] Between January 2023 and December 2023, FFLs were required to use this version of the ATF Form 4473. The quoted language in the following paragraphs is from the form they FFLs were required to use in 2023.

4

> **firearm unless the person answers "yes" to question 21.l.2. and provides the documentation required in 26.d. I also understand that making any false oral or written statement or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale to predominately earn a profit without a federal firearms license is a violation of Federal law.**

9. Once the ATF Form 4473 is completed and signed by the purchaser attesting to the accuracy of his/her responses, the FFL is then obliged under federal and state law to conduct a criminal background check and obtain approval of the sale. The FFL's typically charge the purchaser for fees associated with conducting the criminal background check. FFLs are also legally required to notify ATF through the filing of a "multiple purchase form" if any individual purchases two or more handguns from an FFL during any five-day period. Further, because an FFL is engaged in the business of selling firearms for a profit, they are obliged to charge sales tax and report their annual earnings to the Internal Revenue Service as may be required by law.

10. 18 U.S.C. § 922(a)(1)(A), provides in pertinent part:

> **It shall be unlawful for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.**

11. The term "dealer" is defined by Title 18, United States Code, Section 921(a)(11) as:

> **[A]ny person engaged in the business of selling firearms at wholesale or retail, any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or any person who is a pawnbroker.**

12. As applied to a dealer in firearms, the term "engaged in the business" under Title 18, United States Code, Section 922(a)(1)(A), is defined by 18 U.S.C. § 921(a)(21)(C) as:

> **[A] person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms.**

13. In considering whether a person is engaged in the business of selling firearms, the term "to predominantly earn a profit" is defined by 18 U.S.C. § 921(a)(22) as:

> **[T]he intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: Provided, that proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.**

*Firearms Transported to Mexico*

14. On or about May 27, 2023, a man, M.B.R., was encountered by the CBP as he attempted to make entry into Mexico at the Eagle Pass Texas Port of Entry. M.B.R.'s pickup truck was selected for inspection.

15. M.B.R. told the CBP officers that he is a resident of Lake County, in the Middle District of Florida. He stated that he was traveling from Orlando, Florida to San Diego de la Union, Guanajuato, Mexico. I know based on my training and experience that this area in Mexico is currently a war zone with cartels fighting for control of the territory.

16. CBP officers asked M.B.R. to offload all the items in his truck and trailer. The items were inspected. In plastic storage containers, the CBP officers found 10 handguns, 9 rifles, 7 shotguns, 20 magazines, and large amounts of assorted ammunition.



*Pictured above are all the firearms and ammunition that were seized.*

17. The Department of Homeland Security Investigations ("HSI") was contacted. HSI special agents arrived and interviewed M.B.R. During the interview, M.B.R. stated that he is a "paqueteria," which is someone who engages in an informal delivery service of taking items to and from the United States and Mexico. People who want to send items to Mexico pay M.B.R. in cash. M.B.R. picks up the items and delivers them to the shipper's desired location in Mexico. These transactions are coordinated through Facebook marketplace.

18. On November 17, 2023, CBP officers stopped another pickup truck at the Eagle Pass Texas Port of Entry into Mexico. This truck was driven by a resident of Fort Pierce, Florida, who also identified as a "paqueteria." The CBP officers found 5 firearms in this truck, also destined for Mexico.

*Firearm Purchases*

19. In January 2024, ATF became aware of the firearms found at the Eagle Pass Texas Port of Entry into Mexico during the May and November 2023 incidents (described above). ATF special agents traced the firearms for their purchase history. Although there is not a national gun registry, special agents are able to identify the original retail purchaser of a firearm, the retail

location where it was purchased, and the date of that transaction through a trace of the purchase history.

20. **MEDINA** had purchased one of the 26 firearms that were recovered at the border in May 2023. The period between **MEDINA's** purchase and the recovery of the firearm at the United States' border ("time to crime") is short. The CBP officers recovered the firearm that **MEDINA** had purchased only 9 days after he purchased it.

21. Of the 5 firearms that were recovered at the border in November 2023, **MEDINA** had purchased 2 of them. **MEDINA** had purchased the 2 firearms between 12 and 13 days before the CBP officers recovered them at the United States' border.

22. When reviewing the purchase history of the firearms, the ATF special agents were able to identify the places where the firearms had been purchased. **MEDINA** had purchased the firearms from FFLs in the Middle District of Florida. Since the firearms were purchased in Florida and later recovered in Texas, they have affected in interstate commerce.

23. ATF special agents requested the FFLs that sold the firearms to **MEDINA** to provide every ATF Form 4473 and purchase receipt related to these subjects from January 1, 2023, through December 31, 2023.

9

24. On each ATF Form 4473, **MEDINA** provided email addresses, phone numbers, and additional contact information. **MEDINA** provided two different phone numbers on the ATF Form 4473 records. ATF special agents obtained the AT&T records associated with the phone numbers used on the ATF forms, and **MEDINA** is listed as the subscriber.

25. ATF special agents gathered ATF Form 4473 records from all known firearm purchase locations between January 1, 2023, through December 31, 2023. The following chart summarizes the known firearm purchase history for **MEDINA**:

| Name | Dates of purchase | Number of firearms | Price |
|---|---|---|---|
| **MEDINA** | March 2023 – December 2023 | 74 | $40,828.61 |

26. Many of these firearms are of the same make, model, and/or caliber, which is inconsistent with a collector of firearms. Rather, this conduct fits the pattern of someone who is purchasing firearms for other individuals for profit.

27. The special agents conducted a financial query of **MEDINA** to compare his spending history with his annual reported wage and earning income. **MEDINA's** expenditures on firearms exceeded his reported annual income. Again, this is consistent with someone illegally purchasing firearms to resell for profit. The following chart summarizes his reported 2023 annual

wage and earning income:

| Name | 2023 Wage and Earnings | 2023 firearm purchases |
|---|---|---|
| **MEDINA** | $33,065.79 | $40,828.61 |

*MEDINA's interview*

28. On June 6, 2024, ATF special agents received information that **MEDINA** had purchased 2 firearms from an FFL in the Middle District of Florida, and he was scheduled to pick them up. On this date, the special agents arrived at the FFL and conducted an investigatory stop of **MEDINA** after he picked up the 2 firearms. The special agents identified themselves and informed **MEDINA** that they were interested in having a conversation with him. The special agents asked **MEDINA** if he would like to go to a more private setting for questions, and he agreed. The special agents told **MEDINA** that he was not under arrest and did not have to speak with them. The special agents informed **MEDINA** than there was a police department less than a mile away. They told him that they could question him there. **MEDINA** agreed to go. The special agents informed **MEDINA** that they would drive him to the location for safety reasons. He agreed to go with them. The subsequent, consensual interview was recorded.

29. At the police department, the ATF special agents introduced themselves and again informed **MEDINA** that he was not under arrest and could leave at any time. They advised that any information he provided

would be voluntary. The special agents informed **MEDINA** that he was being investigated due to the number of firearms he had purchased in a short period of time. They asked **MEDINA** how many firearms he had purchased in the last year. **MEDINA** first informed the special agents that he had purchased only 4 firearms. He told the special agents that he has had problems in the past due to having his identity stolen. As the interview continued, however, **MEDINA** eventually acknowledged that he had purchased more than 4 firearms. He said that he had sold most of the firearms to co-workers or people who showed interest in the firearms. **MEDINA** told the agents that he only had 4 firearms on his possession: the 2 firearms he had just received from the FFL and 2 firearms that were at his residence. During the interview, the special agents informed **MEDINA** that they would take the 2 firearms he had just received for investigative purposes. **MEDINA** agreed.

30. During the interview, **MEDINA** said he had purchased at least 15 firearms at the request of two other people. **MEDINA** stated that he was approached by an individual from South Carolina who asked him to buy 10 firearms on behalf of that individual. **MEDINA** told this person that he could not buy 10 firearms at one time, but he agreed to purchase the firearms over time. **MEDINA** stated that a second person, who he identified as the brother of the South Carolina individual, also approached **MEDINA** and asked him

to purchase 5 firearms in the same manner. **MEDINA** told this person that he needed some time because he had recently purchased firearms. **MEDINA** stated he would get approximate $500 for each firearm he sold. **MEDINA** stated that he had been asked to transport the firearms to Mexico, but he denied doing it.

31. The special agents asked **MEDINA** if he would provide consent for a search of his phone. The phone he provided was one of the phones he listed on the ATF forms during the purchases of the firearms in question. **MEDINA** agreed to let them search it. **MEDINA** read and signed a Consent to Search form. He provided the special agents with his passcode to access the contents of his phone. During a quick search of the messages, the special agents found a conversation with another person during which firearms were discussed. In this conversation, it appeared that **MEDINA** was discussing a specific firearm that **MEDINA's** spouse possessed. His spouse resides in Mexico. **MEDINA** informed the special agents that the person he was messaging is his wife's brother. He advised that the firearm they were discussing is a firearm that **MEDINA** unlawfully drove through the United States and Mexico border without declaring it.

32. After the interview concluded, **MEDINA** then traveled to his home in Lake County, in the Middle District of Florida. The special agents

13

followed him to his home.  **MEDINA** went inside his home and brought out the other 2 firearms he said were in his possession.  He surrendered these 2 firearms to the special agents.

## CONCLUSION

33.   Based on the foregoing, I respectfully submit that probable cause exists to believe that between on or about January 1, 2023, and on or about December 31, 2023, **MEDINA** committed the offenses of knowingly making a materially false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), and causing an FFL to maintain false information in its official records, in violation of 18 U.S.C. § 924(a)(1)(A).

This concludes my affidavit.

Respectfully submitted,

_____
Special Agent Octavia Johnson
Bureau of Alcohol, Tobacco, Firearms
and Explosives ("ATF")

Attested to by the applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by telephone on July 3, 2024.

_____
Philip R. Lammens
United States Magistrate Judge

14